## JONES' EXECUTORS *vs.* JONES.

Where lands are devised to a woman and her children, she having children living at the time of the devise, the word "children" must be taken as a word of *purchase*, and the children take a joint estate with the mother. A provision that the devisee shall pay an annuity for the life of another is sufficient at the common law to enlarge a life estate to a fee simple.

A testator bequeathed the rest, residue, and remainder of his real and personal estate to his grand daughter and her children, provided she should pay to S. the sum of $40 during her natural life, and should paint and keep in good repair the fence around his burial lot. At date of will and at the death of the testator the grand daughter had two children living, a son and a daughter. In a previous part of the will provision was made for the son of the grand daughter, the fund being withheld from him until he attained twenty-one.

*Held*, that the property included in the residuary clause went exclusively to the grand daughter.

*Held further*, that her estate in the lands was a fee simple, and not a fee tail.

There was a codicil to the above will, as follows: " I, D. J., make this codicil to my last will and testament, that is, I sell unto C. S. my tavern house and lot, with one-third of the lot behind the barn, for the sum of $6950, provided he, the said C. S., satisfies my executors as to the pay-

ment of the same." *Held*, that the design of the codicil was to empower the executors to convey the land which the testator had agreed to sell upon the payment by the vendee of the purchase money.

It is not competent for the purchaser to show by parol evidence that the scrivener who drew the codicil made a mistake, and that he was to have two-thirds of the lot behind barn.

*W. S. Whitehead*, for complainants.

THE CHANCELLOR. The residuary clause of the will upon which the first ·question in the cause arises is as follows: "I give, devise, and bequeath all the rest, residue, and remainder of my real and personal estate to my grand daughter Marietta, wife of James Pettigrew, and her children, provided she pays, or causes to be paid unto Sally Smith, daughter of William Smith, deceased, the sum of $40 each and every year during the natural life of the said Sally Smith, also to paint and keep in good repair the fence around my burying lot in Springfield cemetery."

At the date of the will and at the death of the testator the grand daughter had two children living, a son and a daughter.

According to the familiar rule in Wildes' case, where lands are devised to M. and her children, she having children living at the time of the devise, the word children must be taken as a word of purchase, according to its natural import, and the children take a joint estate with the mother in the land devised. *Wildes' case*, 6 *Coke* 16, *b ;* 2 *Williams on Executors* 937 ; *Oates* v. *Jackson*, 2 *Strange* 1172.

This construction, like every other, is liable to be controlled by provisions in the will indicating a different intention on the part of the testator; and there are provisions in this will from which it may be naturally inferred that it was not the intention of the testator to divide the land devised between the grand daughter and her children. The devise is made upon the condition that the grand

daughter shall pay an annuity of $40 for the life of another. This alone is sufficient at the common law to enlarge a life estate to a fee simple. *Baddely* v. *Leppingwell*, 3 *Burr.* 1533; *Reed* v. *Hatton*, 2 *Mod.* 25; *Goodright* v. *Stocker*, 5 *T. R.* 13; *Andrew* v. *Southouse*, 5 *T. R.* 292.

The grand daughter is also to paint and keep in repair the fence around the testator's burying lot. These burthens are not a charge upon the estate devised, but they are a personal charge upon the grand daughter, being made a condition of the devise. The grand daughter was the primary object of the testator's bounty. It cannot be presumed that he intended to place her in a worse condition as to the property devised than her children. But this will be the necessary result if they divide the land devised with their mother; for they take their shares free from all encumbrance, whereas she takes hers subject to burthens which may be equal to the whole value of the land devised. As the entire condition upon which the devise is made is to be performed by the grand daughter, the natural inference is that the testator designed that she should take all the property devised.

The testator had also, in a previous part of the will, made a large provision (in proportion to the amount of his estate) for the son of his grand daughter, and had carefully provided that he should not come into the enjoyment of it until he attained the age of twenty-one years, the income in the mean time to be received by his mother. At the time of the devise both of the children were infants of very tender years. The residuary bequests include personal as well as real estate. No provision is made for its investment or guardianship of the property of the infants during their minority, as in case of the legacy specifically bequeathed. The testator, having carefully provided that the infant should not come into possession of the specific legacy till his majority, cannot be presumed to have intended that both the infants should come into the immediate possession of the residuary estate.

I think, from these considerations, that the testator designed to give all the property included in the residuary clause to his grand daughter, and not to divide it between her and her two living children. And this conclusion is in accordance with what would be the natural desire and purpose of the testator, *viz.* that the estate should benefit equally all the children of his grand daughter, as well those afterborn as those who were living at the date of the will; for if the word "children" in the residuary clause be taken as a word of purchase, and not of limitation, only the children in *esse* at the death of the testator can share in the benefit of the devise. They alone will take to the exclusion of all afterborn children. 2 *Powell on Dev.* 302.

The word "children" being regarded as a word of limitation, the question still remains whether the testator used it as synonymous with "heirs" or "heirs of her body." Did he intend to give to his grand daughter an estate in fee or an estate tail?

As to the personal estate, it is immaterial which construction be adopted, for it is well settled that if the words of the devise give an estate tail only in the land they give an absolute estate in the personalty included in the same disposition. *Donn* v. *Penny,* 19 *Vesey* 545 ; *Dunk* v. *Fenner,* 2 *Russ. & M.* 557; *Simmons* v. *Simmons,* 8 *Simons* 22 ; 2 *Williams on Ex'rs* 937, 945, 949.

The grand daughter therefore, in either event, will take the personal estate absolutely, and she takes also a fee simple in the land. The residuary clause is an absolute disposition of all his estate. Its language is, "I give, bequeath, and devise all the rest, residue, and remainder of my real and personal estate to my grand daughter." There is no devise over. It is clear that the testator parted with the fee simple in the lands.

It may be remarked moreover, that if this estate of the grand daughter were construed to be an estate tail, she would by force of the statute (*Nix. Dig.* 196, § 11,) take

only a life estate with remainder in fee to her children, so that, by construction and by force of the statute, the grand daughter would, in direct violation of the well settled rule of construction, take only a life estate, although required by the will to pay an annuity for the life of another.

II. The codicil is as follows: "I, David Jones, make this codicil to my testament and last will, that is, I sell unto Charles H. Smith my tavern house and lot, with one-third of the lot behind the barn, for the sum of $6950, provided he, the said Charles H. Smith, satisfies my executors as to the payment for the same."

The codicil, though very inartificially drawn, was designed to empower his executors to convey the land which the testator had agreed to sell upon the payment by the vendee of the purchase money pursuant to the contract of sale. Upon the payment of the purchase money by the purchaser on or before the first day of April next the executors will be decreed to convey to Smith the property specified in the codicil.

An attempt is made on the part of the purchaser to show by parol that the agreement made by the testator was to convey not *one-third*, as stated in the codicil, but two-thirds of the lot behind the barn, and that in this particular a mistake was made by the scrivener who drew the codicil.

The evidence is clearly incompetent. The terms of the codicil are clear, and cannot be contradicted or altered by parol. 1 *Greenl. on Ev.* § 275, § 325.

The deed must be made pursuant to the terms of the will, " for the tavern house and lot and one-third of the lot behind the barn," as it was at the date of the codicil, including the part devised to the wife.

It is competent to prove by parol what part of the lot was agreed to be conveyed. This is not contradicting or altering the terms of the will, but merely applying it to its proper subject matter. 1 *Greenl. on Ev.* § 286–7–8.

The evidence shows that the part of the lot agreed to be conveyed was that part immediately in the rear of and adjoining the tavern lot, and between Washington street and the line of the lot devised by the testator to his widow, and extending westward to the rear of the last mentioned lot, or so far as will constitute one-third in quantity of the entire lot. The conveyance must be made accordingly.